Judgment is entered in accordance with the views expressed herein.

ALBERT C. BARCLAY, JR., PLAINTIFF, v. THE FIRST NATIONAL BANK OF HIGHTSTOWN, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided August 6, 1963.

*Mr. Albert C. Barclay,* attorney for plaintiff.

*Messrs. Katzenbach, Gildea & Rudner* (*Mr. George Gildea,* appearing), attorneys for defendants.

BENNETT, J. C. C. (temporarily assigned). In this action plaintiff Albert C. Barclay, Jr., moves for a summary judgment which would in effect declare him a duly elected director of defendant The First National Bank of Hightstown. Defendant, on the other hand, demands summary judgment in its favor.

Factually, it is undisputed that plaintiff is a substantial stockholder of defendant bank, a national banking association with its principal office at Hightstown, New Jersey. In November 1962 plaintiff was permitted to examine the stock transfer books of defendant bank. Shortly thereafter he began to solicit proxies for the annual meeting to be held on January 8, 1963.

On December 31, 1962 Beatrice Gaskill, owner of 130 shares of the capital stock of defendant bank, appointed M. H. Hageman and F. W. Branford as her proxies to vote her shares at the annual meeting. On January 5, 1963 Miss Gaskill revoked the proxy previously given to Hageman and

Branford, and appointed plaintiff as her proxy to vote these shares. The proxy by which Miss Gaskill appointed plaintiff was undated.

On January 4, 1963 Mary Petterson, owner of 100 shares of the capital stock of defendant bank, appointed M. H. Hageman, and F. W. Branford as her proxies to vote her shares at the annual meeting. On January 5, 1963 Mrs. Petterson revoked the proxy previously given to Hageman and Branford, and appointed plaintiff as her proxy to vote these shares. This proxy was also undated.

At the annual meeting of defendant bank, held on January 8, 1963, the number of directors for the ensuing year was fixed at eight. The plaintiff and eight other stockholders were nominated as directors. Instructions as to the manner of voting were given by the attorney for the bank, George Gildea. All parties were told to mark their ballots, staple them to the appropriate proxies, and place them in the voting basket on the table at which the chairman and secretary of the meeting were seated. All proxies voted at the annual meeting, including those given the plaintiff by Miss Gaskill and Mrs. Petterson, were voted in this manner. No separate basket or special provision was made with respect to the method of voting or filing of proxies—they were all voted in like manner. It is undisputed that the proxies voted in favor of the incumbent directors were filed with the cashier of the bank prior to the election, and that none voted in favor of Mr. Barclay was so filed.

Conflicting proxies were voted at the meeting, and the judges of election asked defendants' attorney for advice as to the method of resolving these conflicts. Defendants' attorney advised the judges to count undated proxies where no other proxy was submitted, but to count the dated proxies where both a dated and an undated proxy for the same shares had been voted. This method was followed by the judges and 8,480 votes cast on undated proxies were counted for plaintiff.

When all votes had been counted the judges of election announced that 11,440 votes had been cast for plaintiff and

13,255 votes for each of the incumbent directors. Plaintiff immediately challenged the election. The following day the cashier of the bank discovered that defendants' proxies from Miss Gaskill and Mrs. Petterson had been revoked by plaintiff's proxies. They were, therefore, withdrawn from consideration and presently benefit neither party to this suit. The final tabulation as shown in the "Certificate of Judges" allocates 11,440 votes to plaintiff and 13,025 votes to each of the eight remaining directors.

As a result of cumulative voting the 230 votes in dispute were worth 1,840 votes. Since this would be enough to elect plaintiff, this action has resulted.

Plaintiff claims that having accepted 8,480 votes cast by undated proxies, defendants cannot now question the validity of undated proxies. In support of this position he relies on case of *Magnus v. Magnus Organ Corp.*, 71 *N. J. Super.* 363 (*Ch. Div.* 1962), wherein the court held that stockholders, who under their corporate bylaws had the reserved right to alter, amend or repeal them, in effect did so when they ratified an employment contract which was longer than that allowed by the corporation's bylaws.

Barclay argues that defendants herein, who allegedly had the power to amend the bylaws at will, should be estopped from questioning the validity of the proxies of Beatrice Gaskill and Mary Petterson since other undated proxies were counted.

Plaintiff further contends that the directors of a national bank transacting business in New Jersey cannot legally impose additional restrictions upon the right of their shareholders to vote by proxy. It is Barclay's position that it is contrary to public policy for the bylaws of defendant bank to require that all proxies be dated, since *N. J. S. A.* 17:9A–90 does not include this requirement.

Defendant's case can be stated very briefly. It consists of a total reliance on the provisions of *N. J. S. A.* 17:9A–90, two affidavits which state that the requirements of this statute were not met, together with corroborative depositions.

The Banking Act of 1948, *N. J. S. A.*, Title 17, *chapter* 9A, controls banking and banking institutions in New Jersey unless there is a federal law to the contrary. In the case at bar the controlling section is *N. J. S. A.* 17:9A–90 which provides as follows:

"Voting in person or by proxy

A. Stockholders of a bank may vote at all meetings either in person or by proxy. Every proxy shall be executed in writing by the stockholder or his agent and shall be filed with the secretary or cashier of the bank. When a proxy is executed by an agent of a stockholder, the instrument authorizing the agent to execute the proxy, or a photostatic copy thereof, shall also be filed with the secretary or cashier of the bank.

B. No proxy shall be valid after eleven months from the date of its execution, unless a longer time is expressly provided therein, but in no event shall a proxy be valid after three years from the date of its execution. *If a proxy is undated, it shall be presumed to be dated as of the date on which it is filed pursuant to this section.*

C. *A proxy shall be revocable at will, but its revocation shall not be effective until written notice of such revocation is filed with the secretary or cashier of the bank.* A proxy shall not be revoked by the death or incapacity of the stockholder until written notice of such death or incapacity shall be filed with the secretary or cashier of the bank. Unless the by-laws otherwise provide, the presence at any meeting of any stockholder who has given a proxy shall not revoke such proxy unless the stockholder shall file written notice of such revocation with the secretary of the meeting.

D. Nothing in this section shall limit the period of validity of a proxy or permit its revocation contrary to its terms, if such proxy is coupled with an interest.

E. *While a meeting of the stockholders is in progress, the filing with the secretary or cashier of the bank required by subsections A and C of this section shall be made with the secretary of the meeting.*" (Emphasis supplied)

The affidavit of Kenneth G. Stults, the executive vice president and cashier of the First National Bank of Hightstown, was submitted by defendant. It established that Stults was present at the stockholders' meeting of Jenuary 8, 1963; that prior to this meeting forms of proxy had been sent to all the stockholders of the bank; that proxies representing 10,510 shares had been returned and filed with him; that these included the ones in dispute from Mary Petterson (100

shares) and Beatrice Gaskill (130 shares), and that both of these proxies were to M. H. Hageman or F. W. Branford; that these proxies from Miss Gaskill and Mrs. Petterson were duly filed with him prior to the annual meeting, and that no notice of the revocation of said proxies was ever given to him prior to or during the meeting. This affidavit also stated that the later undated proxies substituting Barclay for Hageman and Branford were never filed with him and never seen by him until after the election which took place on January 8, 1963. Stults added that all of the proxies that were voted for the eight elected directors were filed with him prior to the annual meeting.

The second affidavit relied on by defendants was that of C. Lester Rue, who was the secretary of the annual meeting of stockholders held on Jenuary 8, 1963. His affidavit states that there was no proxy nor a revocation of any proxy filed with him before or during the above-mentioned stockholders' meeting.

The issue, therefore, is whether or not plaintiff was entitled to have the shares of Miss Gaskill and Mrs. Petterson voted in his favor at the election of directors of defendant bank held on January 8, 1963.

This court finds as a matter of fact that the 230 shares in dispute were originally given by proxy to defendant bank; that these proxies were filed with the Cashier of the bank, Mr. Stults, as required by *N. J. S. A.* 17:9A–90(A), and that said proxies were subsequently revoked by Miss Gaskill and Mrs. Petterson on January 5, 1963, but these revocations were never filed.

*N. J. S. A.* 17:9A–90 provides in part:
"C. A proxy shall be revocable at will, but its revocation shall not be effective until written notice of such revocation is filed with the secretary or cashier of the bank. * * *"

In oral argument before this court plaintiff admitted keeping all of his proxies in his own possession until placing them in the voting basket during the actual election. The revoked

proxies presently in dispute were thus never filed and never brought to the attention of the cashier or secretary. The proxies of Miss Gaskill and Mrs. Petterson were, therefore, before the judges of election both as originally filed and as revoked but unfiled.

*N. J. S. A.* 17:9A–90(E) allows filing with the secretary of the meeting even while it is in progress, or, in other words, up to the last moment. Nonetheless, it still expressly requires filing. The concomitant of filing even at this late date undoubtedly is *scienter*. The issue, then, is whether secrecy should prevail and be rewarded as demeaned by the plaintiff, or whether an atmosphere of common knowledge should prevail as would follow a literal compliance with the statute.

This court feels that the plaintiff should have presented the secretary with the proxies in question even as late as the period of the election so that management would not have been surprised. It is felt by this court that this is the very purpose of "filing" with the cashier or secretary. In the present case, however, the plaintiff chose secrecy to the required disclosure. Thus, the purpose of this statute, which is to avoid problems of this nature, was thwarted.

Following the hearing on June 14, 1963, the court inquired of plaintiff why he had not filed the revocations and proxies herein with the secretary at the annual meeting of the stockholders. He replied by letter on June 21, 1963:

"The answer: Mr. Chamberlin, president of the Bank and chairman of the meeting, instructed all shareholders to staple their proxies to their ballots and place them in a basket on a table at which were seated the president of the bank, the secretary, and the cashier – – – all within an arm's length of the basket. All proxies, both the proxies in question, Mr. Barclay's other proxies and proxies voted for the defendants, were filed in exactly this same manner."

Additional testimony was presented to the court on July 30, 1963 to demonstrate the method of balloting, that plaintiff's proxies were voted on a motion to increase the board of directors from eight to nine, which was defeated, and that

the question of filing was first raised several days after the meeting.

It is concluded by this court that there is no genuine issue of fact, and as a matter of law plaintiff has not complied with the controlling provisions of *N. J. S. A.* 17:9A–90. By failing to file the revoked proxies of Miss Gaskill and Mrs. Petterson he prevented them from becoming effective. The fact that filing never became an issue until after the meeting appears inconsequential in view of this interpretation of the law—it was incumbent upon the plaintiff to comply regardless of balloting process.

For these reasons summary judgment is entered in favor of the defendants.